RAH
2/4/20

BHW/LEP USAO#2018R00394

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT** 2020 FEB -5  PM 5:59
**FOR THE DISTRICT OF MARYLAND**

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DOMINIQUE BOOKER, a/k/a "Star," | : |  |
| VONDA BOLDEN, | : |  |
| PAGE BOYD, | : |  |
| LATINA BRAXTON, | : | **UNDER SEAL** |
| TRINESSE BUTTS, | : |  |
| CHAZ CHRISCOE, a/k/a "Cheese," | : | **Criminal No.** TDC-20-046 |
| WILLIAM COX, a/k/a "Dollar," | : |  |
| KENNETH FONSECA, a/k/a "Bean" | : | **(Racketeering Conspiracy, 18 U.S.C.** |
| SATAYA HALL, a/k/a "Tia" | : | **§ 1962(d); Drug Trafficking Conspiracy,** |
| MARSHALL HILL, a/k/a "Boosie" | : | **21 U.S.C. § 846; Forfeiture, 18 U.S.C.** |
| LAURICE NORFLEET, | : | **§ 1663 & 21 U.S.C. § 853)** |
| VERNARD MAJETTE, a/k/a "Nard" | : |  |
| CHANEL PIERCE, | : |  |
| DARNELL SMITH, a/k/a "Hook," | : |  |
| SAMANTHA WASHINGTON, a/k/a | : |  |
| "Pinky," | : |  |
| **Defendants** | : |  |
|  | : |  |
|  | : |  |

**INDICTMENT**

**COUNT ONE**
**(Racketeering Conspiracy)**

The Grand Jury for the District of Maryland charges that at all times relevant to this

Indictment:

1

## The Enterprise

1.      The Jessup Correctional Institution (JCI) was a Maryland Department of Public Safety and Correctional Services (DPSCS) prison operated since 1991 in Jessup, Maryland, in Anne Arundel County.

2.      JCI was a maximum security prison that housed approximately 1800 male inmates with approximately 423 correctional officers (COs).  JCI was comprised of six buildings where inmates and detainees reside:A Building, B Building, C Building, D Building, E Building, and F Building.  These buildings were further broken down into four wings, A-Wing, B-Wing, C-Wing, and D-Wing, each of which contains 48 dual-occupied cells, 24 on a top tier and 24 on a bottom tier.

3.      Maryland law defines "contraband" as "any item, material, substance, or other thing that: (1) is not authorized for inmate possession by the managing official; or (2) is brought into the correctional facility in a manner prohibited by the managing official." Md. Code Ann., Crim. Law § 9-410.  Further, under Maryland law, a person may not, "(1) deliver any contraband to a person detained or confined in a place of confinement; (2) possess any contraband with intent to deliver it to a person detained or confined in a place of confinement; or (3) knowingly possess contraband in a place of confinement." Md. Code Ann., Crim. Law § 9-412.

2

4.      COs received annual training in ethics and professionalism. COs are taught that:

Inappropriate relationships with inmates can include bribery, conflicts of interest, solicitation and acceptance of gifts, the offering of gifts, favors and services to inmates, ex-inmates, relatives of inmates, improper contact or failure to report contact with inmates, ex-inmates, relatives or friends and the appearance of inappropriate relationships.

According to the Correctional Officer's Handbook, which the COs are provided:

The illegal possession and/or use of any controlled substance and/or controlled paraphernalia while on or off duty is strictly prohibited.... An employee may not possess or convey contraband into an institution or onto institutional property.

5.      JCI constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4). JCI engaged in, and its activities affected, interstate and foreign commerce.

### Purpose of the Enterprise

6.      The primary purpose of JCI was the safe confinement, supervision, and rehabilitation of felons in the State of Maryland. Correctional officers have a duty to further the legitimate purpose of JCI by ensuring that inmates follow the rules enacted for their health and safety and the health and safety of prison employees and the larger community, including the prohibition of criminal activity while incarcerated.

### The Purpose of the Defendants

7.      The purpose of the defendants was to violate the legitimate purposes of JCI to further their illegal scheme, enrich themselves, and create a culture of corruption and lawlessness inside the prison that would allow them to continue their racketeering activity.

<u>Correctional Officer Defendants</u>

8.    The CO defendants abused their positions of trust as sworn officers of DPSCS by

trafficking contraband, including, but not limited to, narcotics, alcohol, tobacco, and cell phones

in exchange for bribes; engaging in sexual relations with the inmates; and subverting the safe and

proper administration of the prison.  The following defendants were COs assigned to JCI for some

or all of the time charged in this Indictment and smuggled contraband to inmates housed at JCI for

some or all of the time charged in this Indictment:

> **a. DOMINIQUE BOOKER, Correctional Officer**
> **b. CHANEL PIERCE, Correctional Dietary Officer**

<u>Inmate Defendants</u>

9.    The inmate defendants offered COs money and other things of value in exchange

for smuggling contraband into JCI and transporting it within JCI.  The inmate defendants enriched

themselves by trafficking contraband, including narcotics, alcohol, tobacco, and cell phones to

other inmates.  The following defendants were inmates housed at JCI for some or all of the period

charged in this Indictment:

> **a.  PAGE BOYD,**
> **b.  WILLIAM COX, a/k/a "Dollar,"**
> **c.  KENNETH FONSECA, a/k/a "Bean,"**
> **d.  MARSHALL HILL, a/k/a "Boosie,"**
> **e.  VERNARD MAJETTE, a/k/a "Nard,"**
> **f.  DARNELL SMITH, a/k/a "Hook,"**

<u>Facilitator Defendants</u>

10.    The outside facilitator defendants participated in unlawful activities in furtherance

of the COs and inmates' purposes by procuring and transporting narcotics, cell phones, and

tobacco to COs and paying bribes to COs to smuggle the contraband items into JCI for distribution

by inmates. The following defendants acted as facilitators of the criminal activities of the employees and inmates:

    a.  **CHAZ CHRISCOE, a/k/a "Cheese,"**
    b.  **VONDA BOLDEN,**
    c.  **LATINA BRAXTON,**
    d.  **TRINESSE BUTTS,**
    e.  **SATAYA HALL, a/k/a "Tia,"**
    f.  **LAURICE NORFLEET,**
    g.  **SAMANTHA WASHINGTON, a/k/a "Pinky,"**

### The Racketeering Violation

11. Beginning at a date unknown to the Grand Jury, but at least by in or about 2017, through on or about the date of this Indictment, in the District of Maryland and elsewhere, the defendants,

**DOMINIQUE BOOKER, a/k/a "Star,"**
**VONDA BOLDEN,**
**PAGE BOYD,**
**LATINA BRAXTON,**
**TRINESSE BUTTS,**
**CHAZ CHRISCOE, a/k/a "Cheese,"**
**WILLIAM COX, a/k/a "Dollar,"**
**KENNETH FONSECA, a/k/a "Bean"**
**SATAYA HALL, a/k/a "Tia"**
**MARSHALL HILL, a/k/a "Boosie"**
**LAURICE NORFLEET,**
**VERNARD MAJETTE, a/k/a "Nard"**
**CHANEL PIERCE,**
**DARNELL SMITH, a/k/a "Hook," and**
**SAMANTHA WASHINGTON, a/k/a "Pinky,"**

each being a person employed by and associated with JCI, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, together with each other and with persons known and unknown to the Grand Jury, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's

affairs through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United State Code, which pattern of racketeering activity consisted of:

multiple acts indictable under:

a. 18 U.S.C. § 1956 (relating to the laundering of monetary instruments);

and multiple acts involving:

b. Bribery, chargeable under Md. Code Ann. Crim. Law § 9-201 (Maryland Bribery of a Public Employee);

and multiple offenses involving dealing in controlled substances in violation of:

c. 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance); and

d. 21 U.S.C. § 841 (Distribution and Possession with Intent to Distribute a Controlled Substance).

## **Means and Methods of the Racketeering Conspiracy**

12.     Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the enterprise to pursue their illegal purposes were the following:

13.     Defendants conspired to smuggle contraband including narcotics, alcohol, cell phones, and tobacco into the prison in order to enrich themselves and protect and expand the defendants' criminal operation.

14.     Defendant COs accepted or agreed to accept payments from facilitators and/or inmates or engaged in sexual relations with inmates as consideration for smuggling contraband into JCI.

15.     Defendants conspired to traffic in narcotics within JCI including, but not limited to, heroin; MDMA, commonly referred to as "molly;" buprenorphine, commonly referred to by the trade name "Suboxone," a prescription opioid used to treat heroin addiction but abused by inmates; marijuana and synthetic marijuana, commonly referred to as "K2;" and other contraband including cell phones, alcohol, and tobacco.

16.     Defendants conspired to smuggle contraband including narcotics, alcohol, cell phones, and tobacco into the prison in order to enrich themselves and protect and expand the defendants' criminal operation.

17.     Defendants possessed contraband namely narcotics, cell phones, alcohol, and tobacco inside and outside of the prison with the intent to distribute and sell it in order to protect and expand the defendants' criminal operation.

18.     Inmates acted as both wholesalers and retailers of contraband and in the process made profits that far exceeded the profits that could be made by selling similar drugs on the street. For example, conspirator inmates could purchase Suboxone strips for approximately $3 each and sell them inside JCI for approximately $50 each, or for a profit of more than 1,000 percent.

19.     Defendant COs smuggled contraband into JCI. Although required to pass through screening, COs and employees were able to hide contraband on their persons including in their food, water bottles, and internally.

20.     Inside the facility, defendant COs delivered contraband to inmates in the kitchens and in bathrooms or closets near where inmates and staff interacted, among other locations.

21.     Inside the facility, defendant inmates who had jobs that allowed them to move throughout the prison took orders for contraband from inmates and delivered contraband to inmates.

7

22.     Defendant COs had sexual relationships with defendant inmates and others. These sexual relationships facilitated the smuggling and trafficking relationships between COs and inmates.

23.     Inmates and facilitators paid COs for smuggled contraband in cash, as well as using Cash App, Green Dot cards, and other forms of electronic payments. Inmate defendants were able to use contraband cell phones or the jail call system to direct outside facilitators to pay corrupt COs directly using the Cash App from within JCI. Inmate defendants also received payments from inmates for contraband through Green Dot and other forms of electronic payments, often with the assistance of facilitators.

24.     Defendants used cell phones to communicate with one another and coordinate contraband smuggling and trafficking activities. Defendant COs also used cell phones for contraband smuggling purposes.

## Overt Acts

25.     In furtherance of the conspiracy and to achieve the objective thereof, the defendants and others performed and caused to be performed the following overt acts, among others, in the District of Maryland and elsewhere:

1)     On multiple occasions between 2017 and 2019, JCI CO BOOKER brought packages containing K2, Suboxone, alcohol, and tobacco into JCI and delivered those packages to inmates in exchange for payment.

2)     On or about December 5, 2018, JCI inmate William COX used his contraband cell phone to ask BOOKER to buy him two "SD card readers" at Walmart to smuggle into JCI.

3)     On or about December 5, 2018, BOOKER met with facilitator Trinesse BUTTS to obtain contraband to smuggle into JCI.

8

4)  On or about December 6, 2018, COX used a contraband phone to ask BOOKER via text whether BOOKER had received the Suboxone from BUTTS. BOOKER responded, "Yep."

5)  On or about December 8, 2018, BOOKER texted COX on his contraband phone to let him know that she was "taking a roll" of K2 into JCI.

6)  On or about December 11, 2018, BOOKER met BUTTS to obtain contraband to smuggle into JCI.

7)  On or about December 17, 2018, COX texted BOOKER that BUTTS had some Suboxone and K2 to give BOOKER to smuggle into JCI in return for a $1000 bribe payment.

8)  On or about December 17, 2018, BOOKER met BUTTS to obtain contraband to smuggle into JCI.

9)  On or about December 18, 2018, BOOKER texted an outside facilitator that the price to smuggle contraband into JCI was $1,000.

10)  On or about December 20, 2018, BOOKER smuggled Suboxone strips and a necklace into JCI.

11)  On or about December 23, 2018, BOOKER met with BUTTS in the parking lot of a Chuck E. Cheese restaurant to exchange contraband for bribe payments.

12)  On or about December 30, 2018, outside facilitator Chaz CHRISCOE texted BOOKER to arrange a meeting where CHRISCOE could provide contraband to BOOKER for smuggling into JCI and to confirm that BOOKER charged $1000 to smuggle contraband into JCI.

13)  On or about December 30, 2018, BOOKER confirmed to CHRISCOE via text message that she had smuggled contraband into JCI.

14)  On or about December 31, 2018, COX instructed BOOKER to call BUTTS because she had $500 and some Suboxone strips to be smuggled into JCI.

9

15)     On or about December 31, 2018, BOOKER met BUTTS to obtain contraband to smuggle into JCI.

16)     On or about December 31, 2018, BOOKER texted COX on his contraband phone to let COX know that BOOKER had "1 roll" of K2 and some alcohol to smuggle into JCI.

17)     On or about December 31, 2018, COX used his contraband phone to instruct BOOKER via text message that BOOKER should call BUTTS to get some Suboxone and a $500 bribe payment.

18)     On or about January 9, 2019, BOOKER communicated with COX on his contraband phone about some tobacco and "1 big roll" of K2 that she was packaging to smuggle into JCI. During this same communication, BOOKER told COX that the "molly" (i.e., MDMA) came from her.

19)     On or about January 9, 2019, COX used his contraband phone to speak with BOOKER about the poor quality of the MDMA she had smuggled into him.   During the conversation, BOOKER agreed that the MDMA had been "garbage" and had looked "dark" to her.

20)     On or about January 12, 2019, BOOKER and CHRISCOE met at BOOKER's residence to exchange contraband.

21)     On or about January 12, 2019, BOOKER texted CHRISCOE to let him know that she would not smuggle some marijuana into JCI because the smell was too strong and might be detected.

22)     On or about January 12, 2019, BOOKER texted CHRISCOE that, in the future, the Suboxone strips he provided to her for smuggling needed to be taken out of their packaging before he gave them to her.

23)       On or about January 12, 2019, COX texted BOOKER to let her know that he needed more K2.

24)       On or about January 15, 2019, BOOKER told COX over his contraband phone that the drugs she had smuggled into JCI for him were "fresh." In response, COX confirmed that he had already sold the drugs to another inmate.

25)       On or about January 18, 2019, BUTTS texted COX on his contraband phone that she had 20 12-milligram Suboxone strips that would be smuggled in for him.

26)       On or about January 18, 2019, BOOKER met BUTTS to obtain contraband.

27)       On or about January 19, 2019, BOOKER attempted to smuggle K2 and tobacco into JCI, but was intercepted in the parking lot before she could enter the facility.

28)       On or about January 19, 2019, COX instructed BOOKER to "clear [her] house out," to put the contraband in her "laundry room," and "delete everything" on her phones.

29)       On or about January 23, 2019, COX instructed BOOKER to lie to JCI's warden about why she had tobacco and K2 on her on January 19, 2019, when she was intercepted by law enforcement.

30)       On or about January 24, 2019, BOOKER met with BUTTS to return the contraband that she had not yet been able to smuggle into the facility.

31)       On multiple occasions between 2018 and 2019, CO PIERCE brought packages containing K2, Suboxone, alcohol, and tobacco into JCI and delivered those packages to inmates in exchange for payment.

32)       On multiple occasions in 2019, CHRISCOE accepted contraband from outside facilitators that he would then give to PIERCE to smuggle into JCI for inmates.

11

33)    On or about January 27, 2019, BUTTS met with CHRISCOE and other co-conspirators to provide contraband for CHRISCOE to give to PIERCE to smuggle into JCI.

34)    On or about February 14, 2019, COX instructed BUTTS to meet CHRISCOE to exchange contraband and $500 in bribe payments.

35)    On or about February 15, 2019, BUTTS met with CHRISCOE to provide contraband for CHRISCOE to give to PIERCE to smuggle into JCI.

36)    On or about February 17, 2019, COX informed BUTTS that he needed more Suboxone strips.

37)    On multiple occasions in 2019, at COX's instruction, BUTTS accepted money in the form of Green Dot numbers from other inmates' in exchange for contraband.

38)    On or about February 28, 2019, BUTTS obtained contraband, including Suboxone, for COX.

39)    On or about March 1, 2019, during a recorded jail call, inmate Page BOYD discussed whether facilitator Laurice NORFLEET had been able to get in touch with CHRISCOE to exchange contraband.  During the same jail call, BOYD instructed NORFLEET to go out and obtain more contraband for him.

40)    During another March 1, 2019, recorded jail call, NORFLEET confirmed to BOYD that she had obtained a quantity of Suboxone strips for him.  BOYD informed NORFLEET that strips could be sold for up to $50 a piece in the facility.

41)    On or about March 1, 2019, BUTTS met with CHRISCOE to provide contraband for CHRISCOE to give to PIERCE to smuggle into JCI.

42)    On or about March 4, 2019, NORFLEET met with CHRISCOE to provide contraband for PIERCE to smuggle into JCI.  NORFLEET subsequently texted CHRISCOE to

12

inform him that she had provided him with "311 total" Suboxone strips, 100 of which were for "Hooks," an alias for JCI inmate Darnell SMITH. CHRISCOE then asked whether SMITH had paid $700 for the 100, to which NORFLEET responded affirmatively, further informing CHRISCOE that BOYD got 127 strips and that SMITH was to get a "percentage" of the remainder.

43)     On or about March 4, 2019, CHRISCOE provided NORFLEET with his new phone number in order to facilitate further contraband smuggling.

44)     On or about March 4, 2019, BUTTS texted COX to let him know she still had 205 Suboxone strips waiting to be smuggled into JCI.

45)     On or about March 11, 2019, during a recorded jail call, SMITH instructed facilitator Sataya HALL to send money to CHRISCOE in payment for contraband. HALL subsequently sent $1000 to a Cash App account maintained by an associate of CHRISCOE's.

46)     On or about March 14, 2019, during a recorded jail call, JCI inmate Vernard MAJETTE, a/k/a "Nard," instructed his sister and facilitator Samantha WASHINGTON, a/k/a "Pinky," to contact CHRISCOE to find a time to meet to exchange contraband.

47)     On or about March 14, 2019, WASHINGTON met with CHRISCOE on MAJETTE's behalf to provide CHRISCOE with contraband to give to PIERCE for smuggling into JCI.

48)     On multiple occasions in 2018 and 2019, HALL accepted payments on SMITH's behalf from facilitators for other JCI inmates in payment for contraband SMITH had sold inside of JCI.

49)     On or about March 18, 2019, HALL sent a $1 bribe payment to PIERCE's Cash App account with the message "I'm about to send 1250 for Hook."

13

50)     On or about March 18, 2019, HALL sent a $1250 bribe payment to PIERCE's Cash App account with the message, "Hook."

51)     On or about March 29, 2019, HALL sent a $650 bribe payment to PIERCE's Cash App account on SMITH's behalf.

52)     On or about April 4, 2019, WASHINGTON met with CHRISCOE on MAJETTE's behalf to provide CHRISCOE with contraband for PIERCE to smuggle into JCI.

53)     On or about April 5, 2019, HALL sent an $800 bribe payment to PIERCE's Cash App account on SMITH's behalf.

54)     On or about April 6, 2019, NORFLEET met with CHRISCOE on BOYD's behalf to provide CHRISCOE with contraband to give to PIERCE to smuggle into JCI.

55)     On or about April 7, 2019, CHRISCOE texted SMITH's contraband cell phone to let him know that he was giving three balloons of contraband to PIERCE for smuggling into JCI.

56)     On or about April 7, 2019, CHRISCOE met PIERCE to provide her with contraband to smuggle into JCI.

57)     On or about April 8, 2019, during a recorded call, BOYD and NORFLEET discussed the packaging, color, and quantity of Suboxone strips that NORFLEET had obtained to smuggle into JCI for BOYD.

58)     On or about April 9, 2019, SMITH used his contraband cell phone to confirm to CHRISCOE that he had received one balloon of contraband and that there were "2 left" for PIERCE to smuggle into JCI.

59)     On or about April 11, 2019, during a recorded jail call, JCI inmate Kenneth FONSECA, a/k/a Bean, instructed facilitator Latina BRAXTON to send $300 in bribe payments to PIERCE's Cash App account with FONSECA's nickname in the associated message.

FONSECA instructed BRAXTON to tell SMITH that it was $200 for Suboxone and $100 for K2. On or about the same day, BRAXTON did as instructed, sending $300 to PIERCE's Cash App account along with the message "bean."

60)    On multiple other occasions in April and May 2019, BRAXTON sent bribe payments to PIERCE's Cash App accounts on behalf of FONSECA.

61)    On multiple occasions in 2019, facilitator Vonda BOLDEN sent bribe payments to PIERCE on behalf of JCI inmate Marshall HILL, a/k/a "Boosie."

62)    On or about April 12, 2019, during a recorded jail call, HILL instructed BOLDEN to send a $500 bribe payment to PIERCE's Cash App account "for Boosie." On that same day, BOLDEN sent a $500 bribe payment to PIERCE's Cash App account with the message "For Boosie."

63)    On or about April 24, 2019, BOLDEN met with CHRISCOE to provide him with contraband on HILL's behalf to give to PIERCE to smuggle into JCI.

64)    On or about April 26, 2019, NORFLEET met with CHRISCOE to provide him with contraband on BOYD's behalf to give to PIERCE to smuggle into JCI.

65)    On or about April 28, 2019, SMITH used his contraband cell phone to ask CHRISCOE how much Suboxone CHRISCOE had and whether he had received any heroin for smuggling. CHRISCOE responded by confirming that he had received Suboxone but had not received heroin.

66)    On or about April 29, 2019, SMITH used his contraband phone to text inmate MAJETTE, on MAJETTE's contraband phone, that MAJETTE should get his "oj," i.e., Suboxone, to CHRISCOE for smuggling into JCI. MAJETTE responded that he had 70 Suboxone strips ready to be smuggled into JCI.

67)    On or about May 1, 2019, SMITH instructed MAJETTE to "come to dinner" because he had received the Suboxone strips that PIERCE had smuggled into JCI.  MAJETTE responded by asking SMITH whether SMITH wanted any alcohol smuggled into JCI.

68)    On or about May 11, 2019, MAJETTE texted SMITH that his sister WASHINGTON was "grabbing some 12s now," a reference to 12-milligram Suboxone strips, and that, "all together," he had 120 Suboxone strips ready for smuggling.

69)    On or about May 8, 2019, during a recorded jail call, HILL again instructed BOLDEN to send another $500 bribe payment to PIERCE's Cash App account because PIERCE "open[ed] the doors up here."  As instructed, BOLDEN sent $500 to PIERCE and texted PIERCE's cell phone to confirm that PIERCE had received the bribe.

70)    On or about May 22, 2019, BRAXTON texted SMITH on his contraband phone to tell him that she had sent $400 to PIERCE for Suboxone strips.  BRAXTON also asked if SMITH could help smuggle in some "crazy bitches," a reference to MDMA, into JCI for FONSECA.

71)    On or about May 24, 2019, NORFLEET met with CHRISCOE to provide CHRISCOE with contraband to give to PIERCE to smuggle into JCI for BOYD.

72)    On multiple occasions in 2019, PIERCE transferred bribe payments from her Cash App accounts, which were in a false name, to her personal bank accounts.

73)    On or about May 24, 2019, WASHINGTON packaged several balloons of contraband for PIERCE to smuggle into JCI.

74)    On or about May 24, 2019, SMITH texted WASHINGTON from his contraband phone to ask her whether the balloons she was filling with contraband were too big for PIERCE to smuggle into JCI.  WASHINGTON responded by sending SMITH a picture of a balloon that she had "already done" alongside a picture of her hand so that SMITH could gauge the size.

16

75)      On or about May 24, 2019, WASHINGTON met with CHRISCOE to provide him with contraband to give to PIERCE to smuggle into JCI.

76)      On or about May 25, 2019, CHRISCOE met PIERCE to provide her with contraband to smuggle into JCI.

77)      On or about May 25, 2019, PIERCE attempted to smuggle a purple balloon filled with Suboxone on her person into JCI.

78)      On or about May 25, 2019, PIERCE possessed multiple balloons filled with contraband that she intended to smuggle into JCI.

18 U.S.C. §1962(d)

## COUNT TWO
**(Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland further charges that:

1.     Paragraph 25 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     Beginning at a date unknown to the Grand Jury, but at least by 2017, through on or about the date of this Indictment, in the District of Maryland and elsewhere, the defendants,

> **DOMINIQUE BOOKER, a/k/a "Star,"**
> **VONDA BOLDEN,**
> **PAGE BOYD,**
> **LATINA BRAXTON,**
> **TRINESSE BUTTS,**
> **CHAZ CHRISCOE, a/k/a "Cheese,"**
> **WILLIAM COX, a/k/a "Dollar,"**
> **KENNETH FONSECA, a/k/a "Bean"**
> **SATAYA HALL, a/k/a "Tia"**
> **MARSHALL HILL, a/k/a "Boosie"**
> **LAURICE NORFLEET,**
> **VERNARD MAJETTE, a/k/a "Nard"**
> **CHANEL PIERCE,**
> **DARNELL SMITH, a/k/a "Hook," and**
> **SAMANTHA WASHINGTON, a/k/a "Pinky,"**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to violate 21 U.S.C. § 841(a)(1), to wit, to distribute and possess with intent to distribute a detectable amount of buprenorphine, also known as Suboxone, a Schedule III controlled substance; a quantity or mixture of a substance containing a detectable amount of heroin, a Schedule I controlled substance; a quantity or mixture of a substance containing a detectable amount of synthetic cannabinoid, also known as a K2, a Schedule II controlled substance; and a quantity or mixture of a substance containing a

detectable amount of Methylenedioxymethamphetamine, also known as molly, a Schedule I controlled substance.

21 U.S.C. § 846.

## FORFEITURE

### RICO Forfeiture

1.      Pursuant to Title 18, United States Code, Section 1963, upon conviction of an offense in violation of Title 18, United States Code, Section 1962, the defendants

**DOMINIQUE BOOKER, a/k/a "Star,"**
**VONDA BOLDEN,**
**PAGE BOYD,**
**LATINA BRAXTON,**
**TRINESSE BUTTS,**
**CHAZ CHRISCOE, a/k/a "Cheese,"**
**WILLIAM COX, a/k/a "Dollar,"**
**KENNETH FONSECA, a/k/a "Bean"**
**SATAYA HALL, a/k/a "Tia"**
**MARSHALL HILL, a/k/a "Boosie"**
**LAURICE NORFLEET,**
**VERNARD MAJETTE, a/k/a "Nard"**
**CHANEL PIERCE,**
**DARNELL SMITH, a/k/a "Hook," and**
**SAMANTHA WASHINGTON, a/k/a "Pinky,"**

shall forfeit to the United States of America:

a.      any interest acquired or maintained in violation of section 1962;

b.      any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

c.      any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of 1962.

2.      The interests of the defendants subject to forfeiture to the United States pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), include, but are not limited to a sum of money representing the amount of the gross proceeds received by the defendants derived from racketeering activity as alleged in this Superseding Indictment.

Drug Trafficking Forfeiture

3.     Pursuant to 21 U.S.C. § 853, upon the conviction of an offense in violation of 21

U.S.C. §§ 841 or 846, the defendants,

**DOMINIQUE BOOKER, a/k/a "Star,"**
**VONDA BOLDEN,**
**PAGE BOYD,**
**LATINA BRAXTON,**
**TRINESSE BUTTS,**
**CHAZ CHRISCOE, a/k/a "Cheese,"**
**WILLIAM COX, a/k/a "Dollar,"**
**KENNETH FONSECA, a/k/a "Bean"**
**SATAYA HALL, a/k/a "Tia"**
**MARSHALL HILL, a/k/a "Boosie"**
**LAURICE NORFLEET,**
**VERNARD MAJETTE, a/k/a "Nard"**
**CHANEL PIERCE,**
**DARNELL SMITH, a/k/a "Hook," and**
**SAMANTHA WASHINGTON, a/k/a "Pinky,"**

shall forfeit to the United States:

   a.     Any property constituting, or derived from, any proceeds obtained directly or
          indirectly as the result of the offense; and

   b.     Any property used or intended to be used, in any manner or part, to commit, or to
          facilitate the commission of, such offense.

4.     Such property shall include, but not be limited to, a sum of money equal to the

proceeds obtained, directly or indirectly, as the result of the violations of 21 U.S.C. § 846, as

charged in Count Two of this Indictment, and all interest and proceeds traceable thereto,

representing the amount of proceeds obtained as a result of the conspiracy to violate the

Controlled Substances Act.

Substitute Assets

5.     If any of the property described above, as a result of any act or omission of the

defendants:

21

d.  cannot be located upon the exercise of due diligence;

e.  has been transferred or sold to, or deposited with, a third party;

f.  has been placed beyond the jurisdiction of the court;

g.  has been substantially diminished in value; or

h.  has been commingled with other property that cannot be divided without

difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p) and 18 U.S.C. § 1963(m), as incorporated by 28 U.S.C. § 2461(c).


18 U.S.C. § 1963
28 U.S.C. § 2461(c)
18 U.S.C. § 924(d)

Robert K. Hur / bhw
_____

ROBERT K. HUR
UNITED STATES ATTORNEY


A TRUE BILL:


2-5-20
_____
Date

**SIGNATURE REDACTED**
_____
Foreperson